UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERICKA R. RHINEER,

                              Plaintiff,            Case # 18-CV-362-FPG

v.                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**INTRODUCTION**

On May 1, 2015, Plaintiff Ericka Rene Rhineer protectively applied for Disability Insurance Benefits under Title II of the Social Security Act ("the Act"). Tr.[1] 216-22. The Social Security Administration ("SSA") denied her claim and Plaintiff, proceeding with counsel, and a vocational expert testified at a hearing before Administrative Law Judge Dennis A. Clary ("the ALJ"). Tr. 34-95. On January 4, 2018, the ALJ issued an unfavorable decision. Tr. 19-29. The Appeals Council denied her request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff appealed to this Court.[2] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). EFC Nos. 17, 20. For the reasons that follow, Plaintiff's motion is DENIED, the Commissioner's motion is GRANTED, and the ALJ's decision is AFFIRMED.

**LEGAL STANDARD**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 11.

[2] The Court has jurisdiction over this action under 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).

substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g) and § 1383(c)(3)) (other citation omitted).

The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**DISCUSSION**

In conducting the requisite five-step analysis,[3] the ALJ determined that Plaintiff's PTSD, depressive disorder, anxiety disorder, and status post bilateral knee surgery were severe impairments. Tr. 22. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she could: never interact with the general public, only occasionally interact with co-workers and supervisors, and cope with only one change in work tasks per day. Tr. 24. Ultimately, the ALJ concluded that there were jobs within the national economy that Plaintiff could perform, thus rendering her not disabled.

Plaintiff argues that the ALJ erred by giving "little weight" to the opinions from Plaintiff's treating counselor, Lauren S. Conley, LCSW-R. The Court disagrees.

As a social worker, Conley is not an "acceptable" medical source as defined in 20 C.F.R. § 404.1513(a), the regulation applicable at the time the claim was filed. However, as SSR-06-03P notes, "[w]ith the growth of managed health care in recent years and the emphasis on containing

---

[3] The ALJ uses this analysis to determine whether a claimant is disabled and therefore entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920.

2

medical costs, medical sources who are not 'acceptable medical sources,'" such as social workers, "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03P, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006). Opinions from these sources are not considered "acceptable" and are therefore not entitled to controlling weight. *Conlin v. Colvin*, 111 F. Supp. 3d 376, 386 (W.D.N.Y. 2015) (citing *Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015)). "However, the ALJ should consider information from 'other sources,' such as social workers, which 'may also help . . . to understand how [the claimant's] impairment affects [her] ability to work." *Krach v. Comm'r of Soc. Sec.*, No. 3:13-CV-1089 GTS/CFH, 2014 WL 5290368, at *6 (N.D.N.Y. Oct. 15, 2014) (quoting 20 C.F.R. § 404.1513(e)). Although the ALJ is "free to decide that the opinions form 'other sources' . . . are entitled to no or little weight, those decisions should be explained." *Piatt*, 80 F. Supp. 3d at 493 (quoting another source). Still, an ALJ may not disregard a medical opinion solely because the opinion is from a nonmedical source. *Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 335–36 (W.D.N.Y. 2018). Like for a treating physician, "[t]he amount of weight to give such opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." *Williams v. Colvin*, No. 15-CV-6119-FPG, 2016 WL 1466562, at *4 (W.D.N.Y. Apr. 14, 2016).

Here, Conley, Plaintiff's treating therapist for several years, issued two opinions regarding Plaintiff's mental health and its effect on Plaintiff's ability to work. In the first opinion, dated October 27, 2015, Conley suggests that Plaintiff has marked, severe, and extreme limitations in virtually all areas of social functioning, concentration, and ability to handle stress. Tr. 429-35. Specifically, Conley opined that Plaintiff had a "severe impairment in social relationships,

empathy and perspective-taking [and was e]asily dysregulated and unable to use effective communication and conflict-resolution strategies." Tr. 430. Plaintiff would have marked limitations in concentration, persistence, or pace, extreme limitations in social functioning, and severe limitations in ability to respond to supervision, coworkers, attendance, and ability to perform simple and complex tasks. Tr. 433-35. Conley opined that Plaintiff was "easily overwhelmed" and had "difficulty with problem-solving," memory, and concentration. Tr. 430. Conley indicated that Plaintiff would be unable to accept supervision, interact with peers, make decisions, adapt to changes, or maintain attendance, among other things. Tr. 431. She also concluded that Plaintiff had marked difficulty with grooming, personal hygiene, and planning daily activities. Tr. 429.

Conley echoed these limitations essentially verbatim in her August 23, 2016 opinion. Tr. 562-68. She added that Plaintiff exhibited "significant hypervigilance, hyperarousal, trust issues, inability to tolerate conflict, easily overwhelmed, inappropriate anger." Tr. 567. Conley highlighted Plaintiff's lack of coping skills, explaining that she "shuts down or leaves situation, difficulty with concentration [and] sustained attention issues due to PTSD." Tr. 567. Other manifestations of the PTSD included "mood lability, irritability, emotional numbing, trust issues, suspiciousness," and "avoidance and difficulty regulating emotions." Tr. 568.

The ALJ afforded "little weight" to these reports because Conley was not an acceptable medical source and "neither her office notes nor the other evidence reflects the level of symptom severity asserted." Tr. 27. The ALJ's reasons for discounting Conley's opinions were correct and the RFC is supported by substantial evidence.

To be sure, and as recognized by the ALJ, Plaintiff suffers from a variety of mental health impairments including anxiety and depression, which are largely tied to her PTSD. Indeed, the

4

medical records are replete with references to Plaintiff's extensive mental health history. But Conley's findings of "extreme," "severe," and "marked" limitations in almost all aspects of social functioning and stress handling are not entirely consistent with the notes from Conley, Plaintiff's other therapists, and Plaintiff herself. For example, the therapy records frequently indicate that Plaintiff's mood was stable and her insight and judgment were fair. On November 2, 2015, Plaintiff reported feeling numb and unmotivated and found it difficult to finish tasks, but she remained logical and goal-oriented. Tr. 447-50. Later that month, she "presented as depressed with pessimistic attitude. This has been [Plaintiff's] general presentation. . . . She reported feeling like her depression is mostly situational." Tr. 445. The therapist noted in December 2015 that Plaintiff "continued to have some difficulty with problem-solving but was somewhat less negative at today's session," and her mood was stable. Tr. 443. Later in December, Plaintiff admitted that she had "been very busy therefore [she] has not been going to volunteer at her daughter's school, where she could potentially get a job." Tr. 439. In November 2016, Plaintiff was again pessimistic, but she reported "less anxiety and depression." Tr. 590-91. In a therapy session in November 2016, Plaintiff admitted not knowing if she could handle a job but she also "noted that she did not want to 'mess up' her disability claim." Tr. 587. On December 20, 2016, Plaintiff reported "No Significant [sic] anxiety." Tr. 583. And on March 3, 2017, Plaintiff's mood was "more stable with congruent affect and increased range" and her thought process was logical and goal-oriented. Tr. 575.

Plaintiff testified that she had worked while her claim was pending (Tr. 38, 51), but that she had trouble working because of her "anxieties, the closeness of everybody there." Tr. 52. With respect to her job, she testified that "it was the situation where I put it in my head that it was something I had to do. I had to go to work. I had to show up. I had no choice. That's what it

was. I had to make myself go because I had no choice. If I would have gave myself the choice, I wouldn't have went." Tr. 80-81. Plaintiff also mentioned having panic attacks and struggling with interacting with coworkers (Tr. 56-58) but that she could go to the store when accompanied by someone else. Tr. 52-54.

The consultative evaluator, Susan Santarpia, Ph.D., indicated that Plaintiff could perform functions of daily living and that she could socialize with friends and family. Dr. Santarpia opined that Plaintiff could follow and understand simple instructions and perform simple tasks, relate with others, and deal appropriately with stress. Tr. 423-46. She further indicated that Plaintiff would have mild limitations in performing complex tasks independently. Tr. 426. Moreover, she opined that Plaintiff's difficulties were not caused by her mental health issues but "by lack of motivation." Tr. 426. Ultimately, the ALJ gave only "some weight" to this opinion because it did not correspond to the opinions of treatment providers like Conley. Tr. 27. Therefore, the ALJ attempted to strike a balance between the extremely severe and partially unsupported opinions of not acceptable sources like Conley with acceptable but non-treating sources like Dr. Santarpia.

It is clear from the evidence described above that Plaintiff has limitations in social interaction, stress-management, and concertation. But the ALJ accounted for these limitations in the RFC by limiting Plaintiff to only occasional interaction with supervisors and coworkers and no interaction with the general public. It cannot therefore be said that the RFC is not supported by substantial evidence. The record demonstrates that Plaintiff is unable to deal with most social interactions, but that she is able to handle *some* interaction, as permitted by the RFC. The severity of the limitations endorsed by Conley are simply not borne out in the record, which demonstrates that Plaintiff was well enough to work and interact with others, albeit not frequently. And, having explained that in his decision, the ALJ did not err in discounting Conley's extremely restrictive

6

opinions regarding Plaintiff's functioning. *See Torbicki v. Berryhill*, No. 17-CV-386(MAT), 2018 WL 3751290, at *4 (W.D.N.Y. Aug. 8, 2018) (ALJ properly afforded opinion of social worker "little weight" because she was not an acceptable medical source, she completed a check-box form in rendering her opinions, and her opinion conflicted with other medical evidence in the record).

## CONCLUSION

Plaintiff's motion for judgment on the pleadings (ECF No. 17) is DENIED, the Commissioner's motion for judgment on the pleadings (ECF No. 20) is GRANTED, and the ALJ's decision is AFFIRMED. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 5, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court